**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIR TECHNOLOGIES LIMITED,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NETFLIX, INC.,**<br><br>**Defendant.** | **Court No. 1:26-cv-00056-JCG** |

**OPINION AND ORDER**

[Denying Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)]

Dated: November 9, 2026

Stephen B. Brauerman and Ronald P. Golden, III, Bayard, PA, of Wilmington, DE; Brett E. Cooper, Seth R. Hasenour, Jonathan Yim, Drew B. Hollander, and John F. Petrsoric, BC Law Group, P.C., of New York, NY. Attorneys for Plaintiff Tir Technologies Limited.

Kelly E. Farnan and Sara M. Metzler, Richards, Layton & Finger, PA, of Wilmington, DE; Gabriel S. Gross and Anne M. Cappella, Weil, Gotshal & Manges, LLP, of Redwood Shores, CA; Rachel L. Weiner Cohen and Matthew Beck, Weil, Gotshal & Manges, LLP, of Washington, D.C.; Joseph Lee, Weil, Gotshal & Manges, LLP, of Los Angeles, CA; Vanessa K. Sim, Weil, Gotshal & Manges, LLP, of San Francisco, CA; Nina Shapiro, Weil, Gotshal & Manges, LLP, of New York, NY. Attorneys for Defendant Netflix, Inc.

Choe-Groves, Judge: Plaintiff Tir Technologies Limited ("Plaintiff" or "Tir Tech") filed this case against Defendant Netflix, Inc. ("Defendant" or "Netflix") alleging infringement of U.S. Patent Numbers 9,800,633 (the "'633 Patent"),

10,484,442 (the "'442 Patent"), and 10,375,444 (the "'444 Patent") (collectively, the "Asserted Patents"). Complaint for Patent Infringement ("Compl.") (D.I. 1); Am. Complaint for Patent Infringement ("Am. Compl.") (D.I. 14); see U.S. Patent Number 9,800,633 ("'633 Patent") (D.I. 14-1); U.S. Patent Number 10,484,442 ("'442 Patent") (D.I. 14-6); U.S. Patent Number 10,375,444 ("'444 Patent") (D.I. 14-8).

Before the Court is Defendant Netflix, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Def.'s Mot.") (D.I. 16). The Court held oral argument on September 9, 2026. Order (August 24, 2026) (D.I. 33). For the following reasons, Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

**BACKGROUND**

Tir Tech is a company organized and existing under the laws of Ireland, with its principal place of business in Dublin, Ireland. Am. Compl. ¶ 2. Tir Tech is the sole owner by assignment of all rights, title, and interest in the Asserted Patents. Id.

The '633 Patent is titled "Just-in-Time Distributed Video Cache," and was issued by the United States Patent and Trademark Office ("USPTO") on October 24, 2017. '633 Patent at [45], [54]. The '442 Patent is titled "Just-in-Time Distributed Video Cache," and was issued by the USPTO on November 19, 2019.

'442 Patent at [45], [54]. The '444 Patent is titled "Partial Video Pre-Fetch," and was issued by the USPTO on August 6, 2019. '444 Patent at [45], [54].

Tir Tech alleges that Defendant Netflix, Inc. is a Delaware corporation with its principal place of business in Los Gatos, California. Am. Compl. ¶ 3. Tir Tech alleges that Defendant has directly infringed one or more claims of the Asserted Patents by: (1) performing the steps of the claims through its own actions; (2) by directing or controlling the performance of such steps by third parties, including through the use of a content delivery network (CDN) under Defendant's control; or (3) through customers and end users acting under conditions established and orchestrated by Defendant. Id. ¶¶ 9, 16, 21, 28, 33, 40. Tir Tech also alleges indirect and willful infringement of the Asserted Patents. Id. ¶¶ 12, 17, 18, 24, 29, 30, 36, 41, 42. Tir Tech identifies the following as the accused products and services: the Netflix video streaming platform, through software code run on Amazon Web Services for the Netflix Application Programming Interface (API) backend services and software code in the Netflix video streaming application. Id. ¶¶ 9–14, 21–27, 34–38.

Tir Tech filed its Complaint on January 16, 2026, alleging direct and induced infringement of the Asserted Patents and seeking monetary damages. See Compl. Plaintiff filed an Amended Complaint on April 13, 2026. See Am. Compl. Defendant filed a Motion to Dismiss on May 13, 2026, asserting that the Asserted

Patents claim patent ineligible material and that the Amended Complaint fails to plausibly allege infringement. Def.'s Mot.; Defendant's Opening Brief in Support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Def.'s Br.") (D.I. 17) at 1–2; see also Defendant's Reply in Support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Def.'s Reply Br.") (D.I. 27). Plaintiff opposes Defendant's motion. Pl.'s Opp. to Def.'s Mot. Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl.'s Br.") (D.I. 25). The Court held Oral Argument on September 9, 2026. Oral Order (Aug. 24, 2026) (D.I. 33).

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks. 28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(1). If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550

U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

In patent infringement cases, allegations of infringement are governed by the Iqbal/Twombly pleading standard. Golden v. Apple Inc., 819 F. App'x 930, 930–31 (Fed. Cir. 2020). "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8 LLC v. Sony Corp. of Am. ("Bot M8"), 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## DISCUSSION

### I. Patentability under 35 U.S.C. § 101

35 U.S.C. § 101 makes patentable "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. This broad provision has an important exception: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." Alice Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." Mayo Collaborative Servs. v. Prometheus Labs., Inc. ("Mayo"), 566 U.S. 66, 71 (2012). Eligibility "is a question of law" with "underlying questions of fact." Simio, LLC v. FlexSim Software Prods., Inc., 983 F.3d 1353, 1358–59 (Fed. Cir. 2020).

In Alice, the Supreme Court reaffirmed the two-step framework set forth in Mayo for distinguishing patents that claim ineligible subject matter from those that claim patent-eligible applications of those concepts. Alice, 573 U.S. at 217. In step one, the court must determine whether the claims are drawn to a patent-ineligible concept, such as an abstract idea. Id. The court examines the focus of the claim and its character as a whole. SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Courts must consider whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead,

on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." Finjan, Inc. v. Blue Coat Sys., Inc., 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting Enfish, LLC v. Microsoft Corp. ("Enfish"), 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the Court then turns to step two to examine "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept–*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 573 U.S. at 217–218 (citations omitted). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." Id. at 221. Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities." Id. at 225 (citation omitted). To transform an unpatentable concept into a patent-eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" Mayo, 566 U.S. at 72 (emphasis omitted).

**A. The '633 and '442 Patents**

A court may limit its analysis of a 35 U.S.C. § 101 challenge to representative claims when the claims at issue are "substantially similar and linked

to the same ineligible concept." Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted). Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat the claim as representative." See Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

The patent challenger asserting that a claim is representative of multiple claims bears the initial burden of making a prima facie showing that the group of claims is substantially similar and linked to the same ineligible concept. Mobile Acuity, 110 F.4th at 1290 (citation omitted). If a prima facie showing is made, the burden shifts to the patent owner to demonstrate why the eligibility of the purported representative claim is not decisive of the eligibility of the other claims within the identified group. Id. If the patent owner cannot make a non-frivolous argument against treating the identified claim as representative, it is precluded from arguing the eligibility of the other claims in the group. Id. (citations omitted).

The '633 and '442 Patents share a common specification and title. See generally '633 Patent; see generally '442 Patent. In general, the '633 Patent concerns providing optimized video to a user using optimized video caching in a network. '633 Patent at 1:17–19. The optimized video caching may be useful to

permit storing of more video files in the local cache of a video optimizer, a computer server, by storing only a short preview of the source file in the local cache. Id. at 7:25–28, 8:17–37. Plaintiff's Amended Complaint and Claim Charts assert at least Claim 1 of the '633 Patent and Claim 1 of the '442 Patent. Am. Compl. ¶¶ 9–10, 23–24. Defendant argues that Claim 1 of the '633 Patent is representative of both the '633 Patent and the '442 Patent, Def.'s Br. at 3, and Plaintiff does not challenge Defendant's assertion, Pl.'s Br. at 7. The Court concludes that Claim 1 of the '633 Patent is representative of both the '633 Patent and the '442 Patent.

Claim 1 of the '633 Patent reads:

> [a] method for streaming optimized video to a client device, the method comprising:
> receiving a request to optimize an original source file from a client device, the original source file stored on an origin server and the request including a key specifying parameters for optimizing the original source file and uniquely identifying the original source file;
> identifying, based on the key, a preview of an optimized version of the original source file in a local cache of a video optimization server, the preview corresponding to a first portion of the optimized version of the original source file;
> generating a query, based on the key, to a cache database maintaining a plurality of reference keys corresponding to a plurality of optimized versions of source files stored on a plurality of other video optimization servers, each reference key specifying parameters of an optimized version of a source file and uniquely identifying the source file;
> receiving, from the cache database, a response indicating

whether the key matches a reference key maintained in the database;
receiving from the cache database, in response to a reference key matching the key, the address of another video optimizer storing a segment of the optimized version of the original source file;
stitching the first portion of the optimized version of the original source file with the segment of the optimized version of the original source file stored on the other video optimizer to generate a stitched optimized version of the original source file; and
streaming the stitched optimized version of the original source file for playback on the client device.

’633 Patent at 22:29–61.

Independent Claim 11 of the ’633 Patent is a system analog to Claim 1 of the ’633 Patent. Id. at 23:51 – 24:21. Similarly, independent Claim 1 of the ’442 Patent implements Claim 1 of the ’633 Patent on a computer, ’442 Patent at 22:41–67, and independent Claim 11 of the ’442 Patent is a system analog to Claim 1 of the ’442 Patent, id. at 23:57 – 24:23.

Defendant argues that each of the claims is directed to an abstract idea, has no inventive concept, and is invalid under 35 U.S.C. § 101. Def.’s Br. at 1.

**i. Alice Step One**

Step one of the Alice analysis requires the Court to “determine whether the claims at issue are directed to a patent-ineligible concept,” such as an abstract idea. Alice, 573 U.S. at 218. The Court considers the claim’s “character as a whole.” Enfish, 822 F.3d at 1335. Eligible patent claims must “focus on a specific means

or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." McRO, Inc. v. Bandai Namco Games Am., Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing Enfish, 822 F.3d at 1336). The claims must do more than break down and organize the steps that humans regularly go through in their minds when performing tasks. See In re Jobin, 811 Fed. App'x. 633, 637 (Fed. Cir. 2020).

Claim 1 of the '633 Patent comprises the steps of: (1) receiving a request from a client device including a key; (2) identifying, based on the key, a first portion of a file in a server; (3) querying, based on the key, a cache database; (4) receiving a response, from the cache database, of a matching reference key; (5) receiving, from the cache database, in response to a matching reference key the address of a second portion of the file in another server; (5) stitching the first portion of the file to the second portion of the file; and (6) streaming the stitched file for playback on the client device. '633 Patent at 22:29–61. These steps are drawn to the idea of retrieving and transmitting data from one device to another. More particularly, the invention relates to retrieving segments of a file from servers over a network for presentation on a client device.

Similar claims reciting the request, retrieval, and presentation of data have consistently been held to be directed to an abstract idea. See, e.g., Elec. Power

Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016) (claims reciting "collecting information, analyzing it, and displaying certain results" fall into "a familiar class of claims 'directed to' a patent-ineligible concept"); Cellspin Soft, Inc. v. Fitbit, Inc. ("Cellspin"), 927 F.3d 1306, 1310, 1315–16 (Fed. Cir. 2019) (claims reciting transmitting data and a unique identifier to a server for storage and retrieving the stored data using the unique identifier were directed to an abstract idea); Affinity Labs of Texas, LLC v. DIRECTV, LLC ("Affinity"), 838 F.3d 1253, 1255–62 (Fed. Cir. 2016) (claims reciting receiving a request from a client device, identifying a media source, retrieving a corresponding media source, and streaming the media source to the client device were directed to an abstract idea); GoTV Streaming, LLC. v. Netflix, Inc. ("GoTV"), 166 F.4th 1053, 1063–67 (Fed. Cir. 2026) (claims reciting receiving a request from a client device including an identifier, retrieving corresponding content, and sending the content to the client device were directed to an abstract idea); AI Visualize, Inc. v. Nuance Commc'ns ("AI Visualize"), 97 F.4th 1371, 1378–79 (Fed. Cir. 2024) (claims reciting receiving a request from a user identifying virtual views, retrieving the identified virtual views not stored locally on the user device from a server, and displaying the local and server retrieved virtual views to the user were directed to an abstract idea); Hawk Tech. Sys., LLC v. Castle Retail, LLC ("Hawk"), 60 F.4th 1349, 1352–58 (Fed. Cir. 2023) (claims reciting receiving a request identifying one or

more streams of video images, retrieving the identified one or more streams of video images from storage over a network, and displaying the retrieved one or more streams of video images were directed to an abstract idea).

Plaintiff argues that the claims provide a specific technical solution to a concrete problem in distributed video streaming networks—the lack of a mechanism to coordinate cached optimized content across the entire network cluster. Pl.'s Br. at 6–7. But the U.S. Court of Appeals for the Federal Circuit ("CAFC") held that when "the claims do not call for any new hardware, whether at the server end, the wireless device end, or the networks that connect them[,]" "[do] not call for an improvement in the wireless device's rendering process[,]" "merely supply a final set of specifications for rendering within the device's constraints[,]" and do not "call for any improvement in ordinary computer (here, server) functions, such as receiving, storing, processing, outputting and transmitting[,]" "[t]here is no improvement of computer/network operations in their ordinary functions, just the use of ordinary functions as a tool for executing the abstract idea." GoTV, 166 F.4th at 1065–66.

Plaintiff contends that the key is not part of a generic database implementation because it encodes specific technical parameters for the required optimization of a source file. Pl.'s Br. at 7. The claim recites "a key specifying parameters for optimizing the original source file and uniquely identifying the

original source file." '633 Patent at 22:33–35. Similar to the CAFC's holding in GoTV, the Court concludes that the parameters for tailoring/optimizing the source file are not an improvement to the client device or server functions. See GoTV, 166 F.4th at 1065–66.

Plaintiff asserts that the recited "cache database" is not a component of conventional distributed video streaming architectures and provides the improvement that optimized source files are provided quicker and without the need for re-transcoding. Pl.'s Br. at 7–8. The claim recites "cache database" as a general label or term lacking technical specificity and without further identification of the details or structure thereof. Much as the CAFC held in GoTV, packages or arrangements of information are just the use of ordinary functions as a tool for executing the abstract idea and not an improvement of computer/network operations, and, therefore, do not escape the abstract idea category. 166 F.4th at 1066. Plaintiff points to the specification to support its view that the "cache database" provides a technical solution to a technical problem. See Pl.'s Br. at 7–8. However, as the CAFC noted in AI Visualize, the Court "refuse[s] to import details from the specification if those details are themselves not claimed." 97 F.4th at 1379 (citing ChargePoint, Inc. v. SemaConnect, Inc., 920 F.3d 759, 769 (Fed. Cir. 2019)). There is no recitation in the claim of how the cache database matches the key and reference keys or identifies the network address, much less in a manner

that would meaningfully support a technical solution to a technical problem in the art.

Plaintiff contends that GoTV is distinguishable because Defendant has not made an analogy between the asserted claims and human practices. Pl.'s Br. at 13. Defendant notes correctly that GoTV imposes no requirement for an analogy to human practices to conclude that a claim recites an abstract idea. Def.'s Reply Br. at 6. Defendant further provides that such an analogy can readily be made, for example, between the asserted claims and data indexing and retrieval that are ordinary, routine, and conventional human activities. Id.

Under Alice step one, the Court concludes that Claim 1 of the '633 Patent and the other asserted claims of the '633 and '442 Patents (of which it is representative for eligibility purposes) are directed to an abstract idea.

**ii. Alice Step Two**

At step two, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Alice, 573 U.S. at 217; see also Mayo, 566 U.S. at 73 (explaining that steps of claims must amount to more than "well-understood, routine, conventional activity").

Defendant argues that Claim 1 of the '633 Patent "merely recites generic hardware performing conventional functions" and when "[v]iewed as 'an ordered

combination,' the sequence of locating, combining, and providing information adds nothing beyond what each element contributes individually." Def.'s Br. at 10–11. Plaintiff counters that Claim 1 of the '633 Patent uses unconventional components to "operate in a specific technical relationship that was not well-understood, routine, or conventional at the time of the invention." Pl.'s Br. at 9–11.

In the Amended Complaint, Plaintiff alleges that the '633 and '442 Patents "relate to improvements in processing devices and systems[.]" Am. Compl. ¶ 1. Although the individual components may be generic (e.g., an identification key and a cache database), the Amended Complaint and its attachments assert factual allegations that Claim 1 of the '633 Patent accomplishes an unconventional improvement, and nothing in the '633 Patent contradicts Plaintiff's allegation. The specification of the '633 Patent provides that the identification key and cache database cooperate to "allow optimized source files to be quickly retrieved and streamed to user devices without requiring an optimizer to re-transcode source files[.]" '633 Patent at 20:12–26; see also id. at 9:22–44. The alleged improvement is reflected in Claim 1 of the '633 Patent. Id. at 22:41–54.

The Court concludes that the Complaint and attachments assert sufficiently an inventive concept that satisfies Alice step two.

**B. The ’444 Patent**

The ’444 Patent concerns providing optimized video to a user using optimized video pre-fetch in a network. ’444 Patent at 1:13–15. The optimized video pre-fetch may be useful to provide instant-on playback while the remaining data of the source file is retrieved from the network without stalling. Id. at 2:19–50. Plaintiff asserts one or more claims of the ’444 Patent. Am. Compl. ¶¶ 35–36. Defendant argues that Claim 1 of the ’444 Patent is representative, Def.’s Br. at 4, and Plaintiff does not challenge Defendant’s assertion. Pl.’s Br. at 7. The Court concludes that Claim 1 of the ’444 Patent is representative.

Claim 1 of the ’444 Patent reads:

> [a] computer implemented method for playback of online content on a user device, the method comprising:
> pre-fetching a first portion of an embedded media file;
> storing the first portion of the embedded media file in a file cache of the user device;
> in response user-playback of the embedded media file:
> providing, from the file cache, data from the first portion of the embedded media file for playback, and
> requesting a next portion of the embedded media file;
> determining a quality of a network connection of the user device by evaluating, from the user device, network parameters indicative of available bandwidth to the user device associated with providing of the next portion of the embedded media file to the user device;
> in response to providing last data from the first portion of the embedded media file from the file cache for play-back, switching to providing data from the next portion of the embedded media file, the next portion and one or more remaining portions of the embedded media file being streamed to the user device by an origin server,

> wherein only the first portion of the embedded media file is stored in the file cache of the user device; and
> requesting, in response to availability of an adaptive bitrate (ABR), the one or more remaining portions of the embedded media file with a varying bitrate based on the quality of the network connection.

’444 Patent at 15:29–54.

Independent Claim 8 of the ’444 Patent implements Claim 1 in “a non-transitory computer-readable storage medium.” Id. at 16:23–51. Independent Claim 15 of the ’444 Patent is a device analog to Claim 1. Id. at 17:26 – 18:8.

Defendant argues that each of the claims is directed to an abstract idea, has no inventive concept, and is invalid under 35 U.S.C. § 101. Def.’s Br. at 1.

**i. Alice Step One**

Claim 1 of the ’444 Patent comprises the steps of: (1) pre-fetching a first portion of a file; (2) storing the first portion; (3) providing the first portion in response to a user-playback request and requesting a next portion; (4) determining a network quality based on the available bandwidth for providing the next portion; (5) streaming the next portion and one or more remaining portions upon playback of the last data of the first portion; and (6) requesting one or more remaining portions with a varying bitrate based on the network quality. ’444 Patent at 15:29–54. These steps are drawn to the idea of retrieving and presenting data over a network. More particularly, the invention relates to retrieving a first segment, a

second segment, and one or more remaining segments over a network for presentation on a user device.

The Court recognized above that claims reciting the request, retrieval, and presentation of data have consistently been held to be directed to an abstract idea by the CAFC. See, e.g., Elec. Power Grp., LLC, 830 F.3d at 1353 (claims reciting "collecting information, analyzing it, and displaying certain results" fall into "a familiar class of claims 'directed to' a patent-ineligible concept"); Cellspin, 927 F.3d at 1315–16 (claims reciting transmitting data and a unique identifier to a server for storage and retrieving the stored data using the unique identifier were directed to an abstract idea); Affinity, 838 F.3d at 1255–62 (claims reciting receiving a request from a client device identifying a media source, retrieving a corresponding media source, and streaming the media source to the client device were directed to an abstract idea); GoTV, 166 F.4th at 1063–67 (claims reciting receiving a request from a client device including an identifier, retrieving corresponding content, and sending the content to the client device was directed to an abstract idea); AI Visualize, 97 F.4th at 1378–79 (claims reciting receiving a request from a user identifying views, retrieving the identified views not stored locally on the user device from a server, and displaying the local and server retrieved views to the user were directed to an abstract idea); Hawk, 60 F.4th at 1352–58 (claims reciting receiving a request identifying one or more streams of

video images, retrieving the identified one or more streams of video images from storage over a network, and displaying the retrieved one or more streams of video images were directed to an abstract idea); Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC ("Two-Way Media"), 874 F.3d 1329, 1337–41 (Fed. Cir. 2017) (claims reciting transmitting message packets to user devices while monitoring and logging the delivery of the packets were directed to an abstract idea).

Plaintiff argues that the claims provide a specific technical method or workflow of partial video pre-fetching and optimizing video for network bandwidth. Pl.'s Br. at 14. Plaintiff contends that the specific technical method or workflow solves a concrete technical problem of long video playback delays or waste of time and network utilization in pre-fetching entire video files. Id. The CAFC held that there was no improvement of computer or network operations when the claims did not call for any new hardware, improvement in ordinary computer or server functions, such as receiving, storing, processing, outputting and transmitting, improvement in the wireless device's rendering process, and merely supplied a final set of specifications for rendering within the device's constraints. GoTV, 166 F.4th at 1065–66. Claim 1 of the '444 Patent recites pre-fetching from a server over a network and storing a portion of a media file on a user device that does not call for any new hardware or improvement in ordinary user device or network functions. See '444 Patent at 15:31–33. Adaptive bitrate adjustment of

the transmission to the user device from the server over the network in Claim 1 of the ’444 Patent merely supplies a final set of specifications for transmission according to network or user device constraints. See id. at 15:51–54. The CAFC concluded in GoTV that the claim did not recite any improvement of the user device or network/server operations in their ordinary functions, but instead used ordinary functions of the user device and server/network as a tool for executing the abstract idea. See 166 F.4th at 1065–66. Similarly, the Court concludes that representative Claim 1 of the ’444 Patent recites the request, retrieval, and presentation of data that have been held consistently to be directed to an abstract idea.

Plaintiff argues that the CAFC in Packet Intelligence LLC v. NetScout System, Inc. (“Packet Intelligence”), 965 F.3d 1299 (Fed. Cir. 2020) held that claims are not considered abstract when the claims represented a specific technical improvement in network packet monitoring. Pl.’s Br. at 14–15 (citing Packet Intelligence, 965 F.3d at 1309). The CAFC in Packet Intelligence held claims not to be abstract when the claims recited “specific technological features functioning together to provide [a] granular, nuanced, and useful classification of network traffic, rather than an abstract result.” 965 F.3d at 1310. By contrast, Claim 1 of the ’444 Patent does not recite specific technological features, instead reciting at a high level a computer, user device, file cache, network, and server. See ’444

Patent at 15:29–54. These features are then employed as per their ordinary functions as tools for executing the abstract idea.

Plaintiff purports that the CAFC in SRI Int'l, Inc. v. Cisco Systems, Inc. ("SRI Int'l"), 930 F.3d 1295, 1301–03 (Fed. Cir. 2019) held claims to be patent-eligible when the claims were directed to an improvement in computer and network technology itself, not to an abstract idea implemented using conventional computer components. Pl.'s Br. at 8–9, 15. The CAFC in SRI Int'l held a claim patentable under Alice step one when the claim's focus was on a specific network defense system that prevented "the normal, expected operation of a conventional computer network", "recit[ed] a specific technique for improving computer network security", and was not a mental process of the human mind. See 930 F.3d at 1303–04. As discussed above, Claim 1 of the '444 Patent does not call for any improvement in ordinary functions of the user device, server, or network, such as receiving, storing, processing, outputting, and transmitting beyond just the use of ordinary functions as a tool for executing the abstract idea of playback of a first portion from a local cache and streaming the remaining portions according to network and user device constraints using an adaptive bitrate.

Plaintiff avers that Two-Way Media is distinguishable because the claims before the CAFC "involved purely generic, result-oriented claims that recited desired functional outcomes without specifying any technological constraints,"

while Claim 1 of the ’444 Patent “define[s] a specific technical implementation, not a generic request for and provision of content.” Pl.’s Br. at 18. Defendant responds that “the claimed sequence is the logical order any pre-fetch and [adaptive bit rate] system would follow, as the specification admits.” Def.’s Reply Br. at 8 (citing ’444 Patent at 1:21–37, 2:10–35). The CAFC in Two-Way Media held insufficient under Alice step one “the use of generic computer components to carry out the recited abstract idea[,]” explaining that mere routing or directing of data between a network and a device without indicating how the claims are directed to a specific scalable network architecture that itself leads to an improvement in the functioning of the system is not sufficient. 874 F.3d at 1338. Claim 1 of the ’444 Patent does not indicate how the claim is directed to a specific network architecture that itself leads to Plaintiff’s alleged improvement but instead uses generic computer components including a user device, network, and server to carry out the abstract idea.

Under Alice step one, the Court concludes that Claim 1 of the ’444 Patent and the other asserted claims of the ’444 Patent (of which it is representative for eligibility purposes) are directed to an abstract idea.

**ii. Alice Step Two**

Defendant avers that Claim 1 of the ’444 Patent “recit[es] only conventional computer components performing ordinary functions” and the ordered combination

does not "add anything inventive." Def.'s Br. at 16. Plaintiff counters that Claim 1 of the '444 Patent recites "[an] ordered combination [that] implements a specific technical architecture to achieve a result, *i.e.*, instant start to playback without consuming significant network bandwidth, missing in the prior art." Pl.'s Br. at 15–17, 19.

In the Amended Complaint, Plaintiff alleges that the '444 Patent "relate[s] to improvements in processing devices and systems[.]" Am. Compl. ¶ 1. Although the individual components may be generic (e.g., a file cache and an origin server), the Amended Complaint and its attachments assert sufficient allegations regarding an unconventional improvement, and nothing in the '444 Patent contradicts Plaintiff's allegation. The specification of the '444 Patent provides that storage of a first portion of the embedded media file in a local cache and streaming of the next portion and one or more remaining portions from a server achieves the result of instant start to playback without consuming significant network bandwidth. '444 Patent at 1:17–34, 2:10–50. The alleged improvement is reflected in Claim 1 of the '444 Patent. '444 Patent at 15:31–33, 15:43–50.

The Court concludes that Plaintiff has pled sufficiently an inventive concept at Alice step two. Defendant's motion with respect to Claim 1 of the '444 Patent and the other asserted claims of the '444 Patent (of which it is representative for eligibility purposes) is denied.

## II. Direct Infringement

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent[.]" 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353. "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." Id. To satisfy the Iqbal pleading standard in a patent case, "[s]pecific facts are not necessary[.]" Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted). The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." Id. (citation and quotation omitted).

### A. The '633 and '442 Patents

"While a typical claim of direct infringement requires proof that a defendant performs each step of the claimed method, joint infringement requires more." Lyda v. CBS Corp., 838 F.3d 1331, 1338 (Fed. Cir. 2016). When a patent owner alleges that multiple parties are involved in practicing the claim steps, a claim of joint infringement requires "pleading facts sufficient to allow a reasonable

inference that all steps of the claimed method are performed and either: (1) one party exercises the requisite 'direction or control' over the others' performance[;] or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." Id. at 1339 (citing Akamai Techs. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015)). Direction and control may be evident if an actor acts through an agent or contracts with another to perform one or more steps of the claimed method. Akamai Techs., 797 F.3d at 1022–23. Direction and control may also be evident when the alleged infringer "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." Id. at 1023.

In the Amended Complaint, Plaintiff alleges upon information and belief that Defendant, through its Netflix video streaming platform and using the Netflix API backend services running on Amazon Web Services servers, performs most of the steps of Claim 1 of the '633 and '442 Patents. Am. Compl. ¶¶ 10, 22. Plaintiff further alleges upon information and belief that Defendant, through its Netflix video streaming applications, directed or controlled the performance of the remaining steps of Claim 1 of the '633 and '442 Patents. Id. The corresponding claim charts for each patent explain and illustrate how the steps of Claim 1 are performed by alleging facts related to Netflix's video streaming platform. Am.

Compl., Ex. 2 ("'633 Claim Chart") (D.I. 14-2); Ex. 7 ("'442 Claim Chart") (D.I. 14-7).

Throughout the claim charts, Plaintiff avers that certain specifics regarding the functionality of the Netflix applications and APIs are within the sole possession, custody, or control of Defendant. See, e.g., '633 Claim Chart at 7, 10, 14, 17, 20, 21, 23; '442 Claim Chart at 7, 10, 14, 16, 19, 20, 22. The Court notes that Plaintiff's allegations regarding the '633 and '442 Patents and Defendant's Netflix video streaming platform and Netflix API backend services are pled upon the assertion that "Netflix uses [Moving Picture Experts Group-Dynamic Adaptive Streaming over Hypertext Transfer Protocol (MPEG-DASH)][,]" that "MPEG-DASH [] works by breaking down a video into a sequence of small segments, typically a few seconds long, each encoded at multiple bitrates and resolutions[,]" that these segments include "the first segment ('a preview')[,]" and that "[t]hese segments are then decoded and seamlessly stitched together by the client." '633 Claim Chart at 9–10; see also '442 Claim Chart at 9–10.

With respect to the permissibility of pleading "upon information and belief," the U.S. Court of Appeals for the Third Circuit has summarized the state of the law as follows:

> This Court has explained that pleading upon information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "*boilerplate and conclusory*

> *allegations*" and "*[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible*." In fact, this Court has explained that "[s]everal Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."

McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 267–68 (3d Cir. 2016) (emphasis and alterations in original) (internal citations omitted). The McDermott court held that the plaintiff's pleadings "upon information and belief" were permissible because the defendant was in sole possession of operating profitability information and plaintiff's remaining allegations regarding a breach of contract explained how the alleged breach occurred by relying on factual allegations regarding the defendant's historical financial performance. Id. Applying McDermott in the patent context, the court in DSM IP Assets, B.V. v. Honeywell Int'l, Inc. ("DSM IP") permitted the limited use of pleading "upon information and belief" because "[m]any of the factual allegations bearing on the issue of infringement were made directly, without the use of the 'information and belief' qualifier." 700 F. Supp. 3d 189, 195–97 (D. Del. 2023).

Defendant argues that Claim 1 of the '633 Patent, limitations 1(f) and 1(g), require that the stitching of a first file portion from a video optimizer and a second file portion from a different video optimizer occur prior to streaming the stitched file for playback on the client device. Def.'s Br. at 18. Plaintiff admits that "[l]imitation [1g] of the '633 and '442 Patents requires the step of 'streaming the

stitched optimized version . . . for playback on the client [] device.'" Pl.'s Br. at 20. Defendant argues that "Tir's claim charts only identify alleged stitching that occurs at the client device after any alleged streaming." Def.'s Br. at 18.

First, the '633 Claim Chart states that "the client dynamically selects and downloads the most appropriate segment in real time . . . segments are then decoded and seamlessly stitched together by the client, allowing smooth, adaptive streaming without requiring a continuous, high-band-width connection." '633 Claim Chart at 20–21. Plaintiff alleges that the client stitches together the segments after those segments are downloaded from the server to the client. See id. Second, the '633 Claim Chart states that "[t]he Netflix application, running on the client device, plays video by segments by requesting the segments from the collection of [Open Connect Appliances] identified in the manifest file. As the video segments are delivered from the collection of [Open Connect Appliances], they are stitched together which in totality form a version of the original source file." Id. at 21. Plaintiff alleges that the client device stitches together the requested segments after those segments are delivered from the server to the client device. See id. Third, the '633 Claim Chart states that "[o]nce the Netflix application has stitched together the sequence of downloaded optimized video segments, the application streams the stitched optimized video segments through the native media playback capabilities of the device or platform." Id. at 22.

Plaintiff alleges that the client device stitches together the downloaded segments and streams the stitched segments on the client device. See id.

Plaintiff argues that "streaming" occurs on the client device. Pl.'s Br. at 20. Under Iqbal/Twombly, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and the ability of the Court to draw a reasonable inference that a defendant is liable for the misconduct alleged depends on the factual content pled. Iqbal, 556 U.S. at 678. The factual allegations in the Amended Complaint are sufficient to make Plaintiff's "theoretically viable claim plausible." McDermott, 649 F. App'x at 267–68. Accepting the facts in the Complaint as alleged to be true and viewing Plaintiff's allegation in the light most favorable to Plaintiff, the Court can reasonably infer that Defendant Netflix's video streaming platform performs the claimed stitching before streaming, and both are performed on the client device.

Accordingly, the Court concludes that Plaintiff has pled sufficiently direct infringement of the '633 and '442 Patents against Defendant.

**B. The '444 Patent**

In the Amended Complaint, Plaintiff alleges upon information and belief that Defendant, through its Netflix video streaming applications, directed or controlled the performance of the steps of Claim 1 of the '444 Patent by providing its service to end users of the Netflix video streaming platform. Am. Compl. ¶ 34.

The corresponding claim chart for Claim 1 of the ’444 Patent explains and illustrates how Claim 1 is performed by alleging facts related to Netflix’s video streaming platform. Ex. 9 (“’444 Claim Chart”) (D.I. 14-9).

Throughout the claim chart, Plaintiff avers that certain specific facts regarding the functionality of the Netflix applications and APIs are within the sole possession, custody, or control of Defendant. See, e.g., ’444 Claim Chart at 8, 11, 14, 16, 19. The Court notes that Plaintiff’s allegations regarding the ’444 Patent and Netflix’s video streaming platform and video streaming applications are pled upon the assertion that “Netflix uses MPEG-DASH[,]” that “MPEG-DASH [] works by breaking down a video into a sequence of small segments, typically a few seconds long, each encoded at multiple bitrates and resolutions[,]” that “[w]hen a Netflix application [] begins playback, it first downloads a Media Presentation Description (MPD) file, which describes the available content, segment structure, and bitrate options[],” that “[b]ased on current network conditions and device capabilities, the Netflix application dynamically selects and downloads the most appropriate segment in real-time[,]” and that “[b]ecause additional segments beyond the first segment are retrieved and queued for the continuous streaming of the video title on the user device, they are not stored in the Netflix application’s file cache.” ’444 Claim Chart at 15.

Applying McDermott in the patent context, the court in DSM IP permitted the limited use of pleading upon "information and belief" because "[m]any of the factual allegations bearing on the issue of infringement were made directly, without the use of the 'information and belief' qualifier." DSM IP, 700 F. Supp. 3d at 196.

Defendant argues that "[C]laim 1 of the '444 Patent requires an 'embedded media file,' but Tir's claim charts nowhere identify what component of the Netflix system satisfies that limitation[.]" Def.'s Br. at 18. Plaintiff contends that the '444 Claim Chart identifies the embedded media file to be "the video media content, provided as DASH media segments[.]" Pl.'s Br. at 20. Defendant responds that the allegations are merely conclusory. Def.'s Reply Br. at 10.

The '444 Claim Chart alleges that "Netflix uses MPEG-DASH" and supports the allegation with a blog post retrieved from the Netflix Technology Blog website stating that Netflix uses "MPEG-DASH" as its "streaming file formats." '444 Claim Chart at 6, 9, 11, 15, 16. The '444 Claim Chart further alleges that "MPEG-DASH (Dynamic Adaptive Streaming over HTTP) works by breaking down a video into a sequence of small segments, typically a few seconds long, each encoded at multiple bitrates and resolutions." '444 Claim Chart at 6, 9, 15.

Under Iqbal/Twombly, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and the ability of the Court to draw a reasonable inference that a defendant is liable for the misconduct alleged depends on the factual content pled. Iqbal, 556 U.S. at 678. The factual allegations in the Amended Complaint are sufficient to make Plaintiff's "theoretically viable claim plausible." McDermott, 649 F. App'x at 267–68. Accepting the facts alleged in the Amended Complaint to be true and viewing Plaintiff's allegation in the light most favorable to Plaintiff, the Court can reasonably infer that Netflix's video streaming platform uses MPEG-DASH to break down a video that is an embedded media file into DASH media segments.

Defendant avers that Tir Tech's claim charts do not "explain how the system stores 'only the first portion of the embedded media file . . . in the file cache of the user device.'" Def.'s Br. at 18–19. Plaintiff contends that the '444 Claim Chart "specifically alleges that the 'Netflix application employs local caching mechanisms to temporarily retain retrieved media segments' and that '[u]pon initiation of playback, the Netflix application reads the pre-fetched initial media segment from the local cache.'" Pl.'s Br. at 20 (quoting '444 Claim Chart at 8) (alterations in original). Defendant claims that the allegations are merely conclusory. Def.'s Reply Br. at 10.

The ’444 Claim Chart alleges that Defendant employs “predictive caching” to store a first portion of a video file, “the initial DASH media segment[,]” in the local cache. ’444 Claim Chart at 4–8. The ’444 Claim Chart alleges that “[a]t the same time that playback begins using the cached first portion, the Netflix application issues one or more network requests for a subsequent DASH media segment, i.e., a next portion of the embedded media file, to continue playback beyond the cached portion. Id. at 9. These subsequent media segments are requested via Hypertext Transfer Protocol (HTTP) from Netflix content servers, such as Netflix Open Connect Appliances, in accordance with the MPEG-DASH protocol.” ’444 Claim Chart at 9. The ’444 Claim Chart alleges that “[b]ecause additional segments beyond the first segment are retrieved and queued for the continuous streaming of the video title on the user device, they are not stored in the Netflix application’s file cache.” ’444 Claim Chart at 15–16.

Accepting the facts alleged in the Complaint to be true and viewing Plaintiff’s allegation in the light most favorable to Plaintiff, the Court can reasonably infer that Defendant Netflix’s video streaming platform stores the initial video media segment in the local cache while streaming subsequent video media segments without storing them in the local cache.

Accordingly, the Court concludes that Plaintiff has pled sufficiently direct infringement of the ’444 Patent against Defendant.

## III. Induced Infringement

In resolving whether indirect infringement is pled properly, the Court must first determine whether Plaintiff has alleged sufficiently direct infringement. See In re Bill of Lading Transm'n and Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.") (internal quotation marks omitted). As discussed above, Plaintiff has pled direct infringement adequately for the Asserted Patents, and the Court proceeds to examine the indirect infringement claims.

To plead induced infringement under 35 U.S.C. § 271(b), a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement. Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017); see also 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Plaintiff is required to allege facts supporting a reasonable inference that the defendant had knowledge of the patent-in-suit. Global-Tech Appliances, Inc. v. SEB S.A. ("Global-Tech"), 563 U.S. 754, 764–66 (2011); see also bioMérieux, S.A. v. Hologic, Inc., No. 18-cv-00021-LPS, 2018 WL 4603267, at *5 (D. Del. Sept. 25, 2018). "[U]nlike direct infringement, the patentee must show that the accused inducer took an affirmative act to

encourage infringement with the knowledge that the induced acts constitute patent infringement." Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 904 (Fed. Cir. 2014) (citing Global-Tech, 563 U.S. at 764–66). Without knowledge of infringement, there is not enough to establish liability for induced infringement. See Global-Tech, 563 U.S. at 765–66. If actual knowledge is not adequately pled, a patentee can establish knowledge of patent infringement by alleging that the defendant was willfully blind, which requires showing that the defendant: (1) subjectively believed that there was a high probability that the induced acts constituted infringement; and (2) took deliberate actions to avoid learning of that fact. Id. at 766–69.

Specific intent is a distinct element from the knowing inducement of infringing acts. "A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" Tonal Sys., Inc. v. ICON Health & Fitness, Inc., No. 20-cv-01197-LPS, 2021 WL 1785072, at *3 (D. Del. May 5, 2021) (quoting Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

If actual knowledge is not adequately pled, a patentee can establish knowledge of patent infringement by alleging that the defendant was willfully

blind, which requires showing that the defendant: (1) subjectively believed that there was a high probability that the induced acts constituted infringement; and (2) took deliberate actions to avoid learning of that fact. See Global-Tech, 563 U.S. at 769.

Defendant argues that Plaintiff failed to plausibly allege direct infringement. Def.'s Br. at 19–20. Defendant contends that Plaintiff's claim that "Netflix provides customers with 'instructions, user manuals, and other materials knowing and intending (or with willful blindness to the fact)' that its customers will infringe [] is a conclusory legal assertion devoid of factual support." Id. at 20.

Plaintiff responds that "[t]hrough Netflix's knowledge of the patents (gained at least through the complaint) and the specific facts with respect to the materials and applications Netflix provides to its customers, Tir [Tech] has alleged sufficiently induced infringement." Pl.'s Br. at 21–22.

Courts in this district have determined that pre-filing knowledge is not required to state a claim for inducement. See Clouding IP, LLC v. Amazon.com, Inc., Nos. 12-cv-00641-LPS, 12-cv-00642-LPS, 12-cv-00675-LPS, 2013 WL 2293452, at *3 (D. Del. May 24, 2013); DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc. ("DoDots"), No. 18-cv-00098-MN, 2019 WL 3069773, at *3 (D. Del. July 12, 2019) (concluding that induced infringement claims based on post-suit conduct are permissible). The complaint can be a source of the knowledge

required to sustain claims of induced infringement occurring after the filing date and can provide sufficient knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement after an amended complaint is filed. See Groove Digital, Inc. v. Jam City, Inc., No. 18-cv-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019); Walker Digital, LLC v. Facebook, Inc., 852 F. Supp. 2d 559, 565 (D. Del. 2012) ("In sum, if a complaint sufficiently identifies, for purposes of Rule 8, the patent at issue and the allegedly infringing conduct, a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of Global-Tech."); SoftView LLC v. Apple Inc., No. 10-cv-00389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("An accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the remaining legal elements of indirect infringement is entitled to recover for any post-filing indirect infringement of those patents.").

The complaint alone cannot operate to establish knowledge without being amended. See Wrinkl, Inc. v. Facebook, Inc., No. 20-cv-01345-RGA, 2021 WL 4477022, at *6–7 (D. Del. Sept. 30, 2021); DoDots, 2019 WL 3069773, at *3; Helios Streaming, LLC v. Vudu, Inc., No. 19-cv-01792-CFC-SRF, 2020 WL 2332045, at *4–5 (D. Del. May 11, 2020), report and recommendation adopted, 2020 WL 3167641 (D. Del. June 15, 2020).

The Amended Complaint and original Complaint named the current Defendant, alleged infringement of the ’633, ’442, and ’444 Patents, and identified the accused product/service as the Netflix video streaming platform. Am. Compl. ¶¶ 9, 21, 33; Compl. ¶¶ 9, 19, 29. The Court can draw a plausible inference in Plaintiff’s favor that Defendant was aware of the Asserted Patents, infringed the Asserted Patents after becoming aware of their existence (at least since the filing of the original Complaint), and knew or should have known that its conduct amounted to infringement. The Complaint contained factual allegations in the originally submitted claim charts sufficient to infer that Defendant’s Netflix video streaming platform satisfied the claim limitations of the Asserted Patents and that Defendant had notice of what conduct of itself amounted to infringement. See generally Compl., Ex. 2 (“Original ’633 Claim Chart”) (D.I. 1-2), Ex. 7 (“Original ’442 Claim Chart”) (D.I. 1-7), Ex. 9 (“Original ’444 Claim Chart”) (D.I. 1-9).

The Amended Complaint and original Complaint allege that Defendant advertises the benefits of the Netflix video streaming platform to customers and provides instructions and user guides to customers for utilizing the infringing functionality of the same. Am. Compl. ¶¶ 14, 26, 38; Compl. ¶¶ 12, 22, 32.

Plaintiff supports the allegation of advertising of the benefits of the infringing product with a public facing webpage describing how “Netflix is a subscription-based streaming service that allows [Netflix’s] members to watch TV

shows and movies on an internet-connected device." Am. Compl., Ex. 3 ("What is Netflix") (D.I. 14-3) at 2. From Plaintiff's allegation and support, the Court can plausibly infer that Netflix conditioned the benefit of the ability to watch TV shows and movies on the use of the Netflix video streaming platform on a customer's internet-connected device.

Plaintiff supports the allegation that Netflix provides instructions and user guides to customers for utilizing infringing functionality with a webpage describing ways to navigate the Netflix video streaming platform and a webpage describing how to download the Netflix video streaming platform on a customer's internet-connected device. Am. Compl., Ex. 4 ("Getting Started with Netflix") (D.I. 14-4) at 2; Ex. 5 ("How to [D]ownload the Netflix [A]pp") (D.I. 14-5) at 2–3. From Plaintiff's allegation and support, the Court can plausibly infer that Netflix provided customers with instructions and guidance to install and use the Netflix video streaming platform on a customer's internet-connected device.

Based on these allegations, the Court concludes that the Amended Complaint and the original Complaint plausibly pled that Defendant had knowledge of the Asserted Patents at least as of the filing of the original Complaint, knowingly induced infringing acts, and possessed a specific intent to encourage another's infringement of the Asserted Patents. Because the Court accepts that a complaint is sufficient for post-suit knowledge when superseded by

an amended complaint, Plaintiff's Complaint and Amended Complaint provided sufficient notice to support a post-suit indirect infringement claim.

Accordingly, the Court concludes that Plaintiff's Amended Complaint provided sufficient allegations of induced infringement of the Asserted Patents against Defendant.

## IV. Willful Infringement

Under 35 U.S.C. § 284, the Court may increase the amount of damages assessed by up to three times. 35 U.S.C. § 284. The U.S. Supreme Court has observed that enhanced damages:

> are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. ("Halo"), 579 U.S. 93, 103–04 (2016).

For willful infringement claims, "the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim[.]" Välinge Innovation AB v. Halstead New England Corp., No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901 (D. Del. Nov. 6, 2018). "The subjective willfulness of a patent infringer, intentional or knowing, may

warrant enhanced damages, without regard to whether his infringement was objectively reckless." Halo, 579 U.S. at 105; see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."). Subjective willfulness may be found when "the risk of infringement 'was either known or so obvious that it should have been known to the accused infringer.'" Halo, 579 U.S. at 101 (quoting In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

At the pleading stage, the subject willfulness standard can be distilled into three elements, that the accused infringer: (1) was aware of the patent; (2) infringed the patent after becoming aware of its existence; and (3) knew or should have known that its conduct amounted to infringement. See Välinge Innovation AB, 2018 WL 2411218, at *13. The Court need not evaluate whether each allegation, taken alone, gives rise to a reasonable inference of pre-suit knowledge of the patent, but may consider the allegations as a whole. Elm 3DS Innovations, LLC v. Samsung Elecs. Co., No. 14-cv-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), report and recommendation adopted, 2016 WL 1274812 (D. Del. Mar. 31, 2016); SoftView LLC, 2012 WL 3061027, at *6.

Defendant argues that Tir Tech failed to plead that Defendant knowingly or intentionally infringed the Asserted Patents after acquiring knowledge of the

patents-in-suit. Def.'s Br. at 20. Defendant contends that because Plaintiff failed to plausibly allege direct or indirect infringement, Plaintiff's complaints cannot give rise to an inference that Defendant knew or should have known that it was infringing. Id. at 20–21.

Plaintiff responds that Defendant's argument should be rejected because Defendant has not shown that Plaintiff failed to plausibly allege infringement. Pl.'s Br. at 22.

This Court has held previously that an original Complaint, later superseded by an Amended Complaint, is sufficient to support a post-suit willful infringement claim at the motion to dismiss stage. See, e.g., Technoprobe S.p.A. v. Formfactor, Inc., C.A. No. 230842-JCG, 2024 WL 2271885, at *8 (D. Del. May 20, 2024); Staton Techiya, LLC v. Harman Int'l Indus., Inc., 734 F. Supp. 3d 354, 367–68 (D. Del. 2024). Plaintiff need only allege facts plausibly demonstrating that Defendant was aware of the Asserted Patents, infringed the Asserted Patents after gaining such awareness, and knew or should have known that its conduct amounted to infringement. See Välinge Innovation AB, 2018 WL 2411218, at *13.

In the Amended Complaint, Plaintiff claims that Defendant willfully infringed the '633, '442, and '444 Patents as follows:

> Defendant obtained knowledge of the [] Patent and that the Netflix video streaming platform infringes the [] Patent at least as of the filing and service of the original Complaint (Dkt. No. 1). Defendant's infringement of the [] Patent has been and continues to be willful and

> deliberate since the filing and service of the original Complaint. At present, Plaintiff does not allege that Defendant willfully infringed the [] Patent prior to the filing and service of the original Complaint.

Am. Compl. ¶¶ 18, 30, 42. The original Complaint named the current Defendant, alleged infringement of the ’633, ’442, and ’444 Patents, and identified the accused product/service as the Netflix video streaming platform. Compl. ¶¶ 9, 19, 29. In the original Complaint, Plaintiff did not explicitly allege “willful and deliberate” infringement by Defendant. Contra Am. Compl. ¶¶ 18, 30, 42. However, Plaintiff did allege in the original Complaint the following:

> At least as of the filing and service of this complaint, Defendant has knowledge of the [] Patent and the infringing nature of the Netflix video streaming platform through, for example, the [] Patent claim chart served herewith. Despite this knowledge of the [] Patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibit []) to use the Netflix video streaming platform in ways that directly infringe the [] Patent.

Compl. ¶¶ 12, 22, 32.

The Court can draw a plausible inference in Plaintiff’s favor that Defendant was aware of the Asserted Patents, infringed the Asserted Patents after becoming aware of their existence, and knew or should have known that its conduct amounted to infringement. The original Complaint contained factual allegations in the originally submitted claim charts sufficient to infer that Defendant’s Netflix video streaming platform satisfied the claim limitations of the Asserted Patents and that Defendant had notice of what conduct of itself amounted to infringement. See

generally Original ’633 Claim Chart; Original ’442 Claim Chart; Original ’444 Claim Chart; see Välinge Innovation AB, 2018 WL 2411218, at *12–13. Accordingly, the Court concludes that Plaintiff has pled sufficiently willful infringement of the Asserted Patents against Defendant.

## CONCLUSION

Upon consideration of Defendant’s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 16), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant’s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 16) is denied; and it is further

**ORDERED** that on or before December 7, 2026, the Parties shall meet and confer and file a joint proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Judge Connolly, which is posted at https://www.ded.uscourts.gov/ (See Chambers, Chief Judge Colm F. Connolly), with a cover letter requesting the Court to enter the joint proposed Scheduling Order (if there are no disputes or other issues concerning scheduling for the Court) or to schedule the Scheduling Conference. If the Parties are unable to agree upon a proposed scheduling order, each Party shall file a proposed scheduling order by the

deadline and contact my Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to arrange a conference.

IT IS SO ORDERED this 9th day of November, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.